IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RODNEY SALMONS,

        Plaintiff,

v.               CIVIL ACTION NO. 3:18-1447

WESTERN REGIONAL JAIL AUTHORITY;
CAPTAIN ALDRAGE;
CAPTAIN SAVILLA; and
ANY CO THAT HAS WORKED IN A-5 SECTION,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Currently pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. *Mot. to Dismiss*, ECF No. 17. While still proceeding *pro se*, Plaintiff Rodney Salmons filed a Response in Opposition to Defendants' motion. *Resp. in Opp'n*, ECF No. 23. Defendants subsequently filed a Reply Memorandum of Law. *Reply*, ECF. No. 24. After Plaintiff retained counsel in this matter, the Court entered an order permitting Plaintiff to file a supplemental response to Defendants' Motion to Dismiss by October 11, 2019. *Order*, ECF No. 31. No supplemental response having been filed, the issues here are nonetheless fully briefed and ripe for the Court's review. For the reasons set forth below, the Court **GRANTS** Defendants' motion.

**I. BACKGROUND**

On November 3, 2018, Rodney Salmons and eighteen other prisoners at the Western Regional Jail in Barboursville, West Virginia jointly filed a Complaint pursuant to 42 U.S.C. § 1983, alleging various violations of the Eighth Amendment and raising claims for injunctive relief and monetary damages. *See Compl.*, ECF No. 2, at 1–9. The Complaint specifically named

the Western Regional Jail Authority,[1] Captain Carl Aldridge,[2] and Captain Samuel Savilla as Defendants, along with "any C.O. that has worked in A-5 section." *Id.* at 1. After reviewing the Complaint, the Magistrate Judge issued a Memorandum Opinion and Order directing the Clerk to open separate civil actions for each of the listed Plaintiffs.[3] *See Mem. Op. & Order*, ECF No. 1, at 3. No allegation in the Complaint specifically concerns Plaintiff; indeed, aside from being listed as a party to this action, his name does not appear anywhere on its face. The Court assumes, however, that Plaintiff's participation in this case is based on at least some of the generalized grievances laid out in the Complaint.

Broadly speaking, Plaintiff alleges inhumane living conditions in Pod Section A-5 of the Western Regional Jail.[4] *Compl.*, at 5–12. Pod Section A-5 is the jail's "segregation unit, designed and operated to house dangerous and troubled prisoners." *Mem. in Support of Mot. to Dismiss*, ECF No. 18, at 11. While it is never explicitly stated, Plaintiff's involvement in this suit would seem to indicate that he was housed in Pod Section A-5 at some point in 2018. While incarcerated

---

[1] No such entity exists; the "Western Regional Jail is owned by the State of West Virginia and operated by the Division of Corrections and Rehabilitation." *Mot. to Dismiss*, at 1 n.1. The West Virginia Division of Corrections and Rehabilitation ("WVDCR") is therefore appearing as a party to this suit.

[2] The caption of this case erroneously lists Carl Aldridge's name as "Aldrage."

[3] The Magistrate Judge based her thoughtful decision on several independent grounds. First, she reasoned that "at least one circuit has determined that the Prison Litigation Reform Act . . . bars" multiple prisoners from joining together as plaintiffs in § 1983 actions. *Mem. Op. & Order*, ECF No 1, at 1 (citing *Hubbard v. Haley*, 262 F.3d 1194, 1198 (11th Cir. 2001)). Second, she noted that "the law is well-settled that it is plain error for a *pro se* inmate to represent other inmates in a class action." *Id.* at 2 (citing *Fowler v. Lee*, 18 F. App'x. 164, 165 (4th Cir. 2001)). Third and finally, she observed that "it is clear from the Complaint that the plaintiffs have been exposed to different circumstances and various levels of alleged harm at different times, involving different transactions with different defendants." *Id.*

[4] A substantial portion of the Complaint relates to two specific inmates, identified as Kenny Hall and Kevin Esque, whom Plaintiff characterizes as "ment[ally] ill." *Compl.*, at 5. The Court will not address these facts in this opinion, however, as they evidently have no relation to any alleged violation of Plaintiff's rights under the Eighth Amendment.

in Pod Section A-5, Plaintiff alleges he was "constantley [sic] [e]xposed to human wast[e], urin[e], [and] fecal matter," and that "the living conditions in the section [were] worse than one would find in a dog pound." *Id.* at 5. Beyond these general claims of unsanitary living conditions, Plaintiff alleges that he and other inmates in Pod Section A-5 "have had to go without s[oap], [toilet] paper, clean clothing as well as Items to clean our cell and day room." *Id.* at 7. He notes that inmates in Pod Section A-5 "might get Ra[z]ors Every 2 weeks if lucky," and that individual cells were moldy and smelled "of urin[e] and fecal matter." *Id.* Plaintiff also references his limited opportunities for out-of-cell recreation, claiming that he and the other inmates "are den[i]ed any outside recreation and barely get out o[f] our [c]ells each day." *Id.* at 9. Finally, Plaintiff alleges that the correctional officers in Pod Section A-5 often refuse to offer medical help. *Id.* At some point after this allegedly inhumane treatment occurred, it appears Plaintiff was transferred to Pod Section A-8 for an unknown period of time. *Resp. in Opp'n*, at 1. In any event, Plaintiff is no longer incarcerated at the Western Regional Jail and is instead housed at the Parkersburg Correctional Center in Parkersburg, West Virginia. *Id.* at 3.

On March 1, 2019, Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mot. to Dismiss*, at 1. On March 5, 2019, the Magistrate Judge issued an order directing Plaintiff to file a Response by April 1, 2019. *Briefing Order*, ECF No. 20, at 1. While there is some confusion surrounding the exact timing of Plaintiff's filing, his Response was docketed on April 3, 2019.[5] The Response makes no mention whatsoever

---

[5] Defendants contend that "it is not clear if the Plaintiff timely filed his response" pursuant to the Magistrate Judge's March 5, 2019 briefing order. *Reply*, at 1. As Plaintiff was still proceeding *pro se* on the date in question, the Court resolves the uncertainty in his favor.

of Plaintiff's time in Pod Section A-5, and instead exclusively relates to events that occurred while Plaintiff was housed in an entirely different part of the Western Regional Jail.[6]

On September 20, 2019, the Magistrate Judge issued an order directing that a status conference be held on October 2, 2019. *Scheduling Order*, ECF No. 28. The day before that conference was set to take place, Michael E. Froble entered a Notice of Appearance as Plaintiff's counsel. *Notice of Appearance*, ECF No. 29. As a result, this action was transferred from the Magistrate Judge to this Court. On October 2, 2019, the Court issued an order directing Plaintiff to file any supplemental response to Defendants' Motion to Dismiss by October 11, 2019. *Order on Supplemental Resp.*, ECF No. 31. Plaintiff's counsel filed no such response. Guided by the principle that "federal courts must take cognizance of the valid constitutional claims of prison inmates," *Turner v. Safley*, 482 U.S. 78, 84 (1987), the Court considers Defendants' Motion to Dismiss below.

## II. LEGAL STANDARD

The Court will liberally construe the Complaint, as it was filed while Plaintiff was still proceeding *pro se*.[7] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Court is mindful that it "may not construct the plaintiff's legal arguments for him." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Indeed, "[t]he special judicial solicitude with which a district

---

[6] As this Response is unrelated to any of the arguments contained in Defendants' Motion to Dismiss—to say nothing of any of the allegations contained in Plaintiff's own Complaint—the Court will disregard any new factual assertions it contains. The Court is cognizant of its duty to liberally construe the pleadings of *pro se* litigants, but such a construction is not boundless. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). This Court is not free to imagine entirely hypothetical connections between the events alleged in Plaintiff's Response and those alleged in his Complaint, and will not do so here.

[7] While Plaintiff has technically retained counsel in this action, it is unclear what—if any—action he has taken to advance his client's interests beyond filing a single-page Notice of Appearance.

court should view . . . *pro se* complaints does not transform the court into an advocate." *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." As such, Rule 12(b)(6) motions will generally serve to test the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 233 (4th Cir. 1999). While a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), its "factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible," *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 592 F.3d 250, 256 (4th Cir. 2009). In reviewing a motion to dismiss based on Rule 12(b)(6), the Court will accept "all well-pleaded allegations in the plaintiff's complaint as true" and draw "all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards*, 178 F.3d at 244. Indeed, "[t]he issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" he makes. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### III. DISCUSSION

As noted earlier, Plaintiff names four parties as Defendants in this action: the West Virginia Division of Corrections and Rehabilitation,[8] Captain Carl Aldridge, Captain Stephen Savilla, and "any C.O. that has worked in A-5 section." *Compl.*, at 1. He seeks both injunctive relief and compensatory damages. Defendants argue that Plaintiff has failed to state a claim for either category of relief against any single defendant.[9] The Court considers this argument below.

---

[8] In considering the instant motion, the Court will treat Plaintiff's claims against the Western Regional Jail as claims against the West Virginia Division of Corrections and Rehabilitation.

[9] Defendants also advance three arguments based on immunity: (1) that the WVDCR is an arm of the state and is therefore immune from suit under the Eleventh Amendment; (2) the

## A. Claims for Injunctive Relief

The gravamen of Plaintiff's prayer for relief lies in a set of injunctive remedies intended to correct the allegedly unconstitutional conditions in Pod Section A-5. *Compl.*, at 5. While he makes several particularized requests, at core Plaintiff asks "the Court to put a stop to this behavior of the staff and bring to light what has been going on at the Western Regional Jail with the inmates in this section." *Id.* Setting aside the merits of Plaintiff's case, Defendants argue that "Plaintiff's claims for declaratory and injunctive relief are moot because he is no longer housed at the Western Regional Jail." *Reply*, at 6. The Court agrees.

For a case to "be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided." *Ross v. Reed*, 719 F.2d 689, 693 (4th Cir. 1983). The mootness doctrine thus limits this Court's subject matter jurisdiction. "If intervening factual or legal events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide questions presented." *Id.* at 694. As "a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendleman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear," as "any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007).

---

WVDCR and Captains Aldridge and Savilla, when acting in their official capacities, are not "persons" within the meaning of § 1983; and (3) that qualified immunity shields Captains Aldridge and Savilla from suit in their individual capacities. These immunity arguments may—and in the case of their first and second arguments, clearly do—have merit, but this case can be resolved even absent consideration of the various immunities implicated here.

Here, Plaintiff is currently incarcerated at the Parkersburg Correctional Center, not the Western Regional Jail. *See Resp. in Opp'n*, at 2. Any injunctive relief this Court could order with respect to Plaintiff's claims would have no effect whatsoever upon his rights. Nor would such an order serve to redress Plaintiff's alleged injuries, all of which are based on occurrences in Pod Section A-5 of the Western Regional Jail.

The Court recognizes that a narrow exception to the mootness doctrine exists where claims are "capable of repetition" yet evade review. *See FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). "Jurisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa*, 507 F.3d 281, at 289. The second prong of this test "requires that the same prisoner face the same alleged wrong at the same prison." *Owens v. FCI Beckley*, No. 5:12-cv-03620, 2013 WL 4519803, at *7 (S.D.W. Va. Aug. 27, 2013) (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). It is, of course, conceivable that Plaintiff could be transferred once again to the Western Regional Jail. "Mere conjecture, however, that the prisoner may return to the first prison and again face the alleged wrong is not sufficient to meet the mootness exception." *Id.* (citing *Higgason v. Farley*, 83 F.3d 807 (7th Cir. 1996)). The "capable of repetition, yet evading review" exception therefore does not apply here, and Plaintiff's claims for injunctive relief are moot.

### B. Claims for Damages

While Plaintiff's claims for injunctive relief are rendered moot by his transfer, his claims for monetary damages are not. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("However, since [Plaintiff] also has sought monetary damages, his entire case is not mooted."). Plaintiff

specifically requests compensation "for every inmate in this section that has be[e]n exposed to the hazards of wast[e] and [reprehensible] behavior of the staff." *Compl.*, at 6. While never explicitly stated in his Complaint, both the Court and the defendants recognize that Plaintiff's claim is based on a violation of his federal civil rights—specifically, his rights under the Eighth Amendment. *See, e.g.*, *Mem. in Support of Mot. to Dismiss*, at 7. Violations of these rights are actionable through 42 U.S.C. § 1983, which provides a private cause of action for the deprivation of constitutional rights under color of state law.[10] *Hafer v. Melo*, 502 U.S. 21, 27 (1991). "To state a claim for relief in an action brought under § 1983," a plaintiff "must establish that [he or she] was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991) (internal quotations omitted). Prison officials are therefore obligated to provide "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). More specifically, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotations omitted). However, "only those deprivations

---

[10] As Defendants correctly note, only "persons" are subject to suit under § 1983. *Mem. in Support of Mot. to Dismiss*, at 5. Neither the WVDCR nor Captains Aldridge and Savilla, acting in their official capacities, are "persons" within the meaning of § 1983. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). The Court's analysis therefore pertains only to Captains Aldridge and Savilla acting in their personal capacities. *See Hafer*, 502 U.S. at 27 ("A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'").

denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (internal quotations omitted).

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotations omitted). The first showing "requires to the court to determine whether the deprivation of the basic human need was *objectively* sufficiently serious, and the second requires it to determine whether *subjectively* the officials acted with a sufficiently culpable state of mind." *Id.* (emphasis in original). Where a Court concludes that a plaintiff has not established the serious deprivation of a basic human need necessary to survive a motion to dismiss, it "need not consider whether [Defendants] acted with an intent sufficient to satisfy the [Eighth] Amendment's state-of-mind requirement."[11] *Id.*

To establish the serious deprivation of a basic human need, a plaintiff must do more than allege the existence of uncomfortable, unpleasant, or even jarring living conditions. "[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and indeed "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). To meet this burden, a "prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the

---

[11] The Court reaches such a conclusion in this case, and therefore will not analyze the subjective intent of the Defendants.

challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal citations omitted).

Here, it is somewhat unclear which facts contained in the Complaint pertain to Plaintiff in particular. Nevertheless, the Court will apply a liberal construction to the Complaint and assume Plaintiff is alleging that each deprivation—unless otherwise indicated—applies to his own experience in Pod Section A-5. With this in mind, Plaintiff raises four general allegations.[12] First, he alleges that he was exposed to human waste and mold in his cell and in the common areas of Pod Section A-5. *Compl.*, at 5–8. Second, he claims that inmates were not supplied with enough soap, toilet paper, and other hygiene products. *Id.* at 7. Third, he argues that he and the other members of Pod Section A-5 were not allowed sufficient time for recreation. *Id.* at 8. Fourth and finally, he alleges that his requests for medical treatment were denied. *Id.*

Before proceeding further, the Court acknowledges that Plaintiff has painted a grim picture of life in Pod Section A-5. He has described an environment that can generously be construed as unpleasant and accurately be construed as atrocious. Taking Plaintiff's factual allegations as true, as the Court is required to do at this stage, it appears that Pod Section A-5 is wracked by unsanitary facilities, deficient supplies, and inadequate procedures. Nevertheless, this Court's role is not to conduct an exhaustive review of every shortcoming at the Western Regional Jail; rather, it is to determine whether Plaintiff has demonstrated a "serious deprivation of a basic human need." *Strickler*, 989 F.2d at 1379. Here, the Court concludes that he has not.

Plaintiff's first set of allegations stems from his exposure to "human wast[e], urin[e], and fecal matter." *Compl.*, at 5. The Complaint does not elaborate on the degree of this exposure,

---

[12] Plaintiff makes additional allegations with respect to inmates Kevin Esque, Kenny Hall, and Jeffrie Turlic. *Compl.*, at 5, 8. As these allegations do not concern Plaintiff directly, the Court will not consider them in the context of the instant motion.

though it does note that two other inmates—Kenny Hall and Kevin Esque—"are men[tally] ill" and "required to live in their own filth." *Id.* The Court readily acknowledges that these conditions may be unclean and irritating, particularly given Plaintiff's other complaints about a lack of soap and cleaning supplies. Nevertheless, as courts throughout this Circuit have held, the mere smell or presence of human waste is not sufficiently serious to constitute a violation of the Eighth Amendment. *See*, *e.g.*, *Harris v. FNU Connolly*, No. 5:14-CV-128-FDW, 2016 WL 676468, at *5 (W.D.N.C. Feb. 18, 2016), *aff'd*, 667 F. App'x. 408 (4th Cir. 2016) (granting motion to dismiss where plaintiff alleged holding cell was unsanitary because of a "massive amount of urine, feces, and vomit on both the floor and walls in which the plaintiff was forced to live for 30 plus days"); *Powell v. Fed. Bureau of Prisons*, No. 1:08-cv-00199, 2009 WL 3160124, at *1 (S.D.W. Va. Sept. 25, 2009) (granting motion to dismiss where plaintiff alleged air was "saturated with the fumes of feces, the smell of urine and vomit as well as other stale body odors"). Indeed, in *Beveranti v. Smith*, 120 F.3d 500, 504–05 (4th Cir. 1997), the Fourth Circuit Court of Appeals concluded that inmates who spent six months in cells that were "infested with vermin" and "smeared with human feces and urine" did not state cognizable Eighth Amendment claims. It follows that the mere presence of human waste, offensive though it may be, does not represent a serious deprivation of a basic human need. Even if it did represent such a deprivation, Plaintiff has not asserted any actual injury that resulted from the presence of human waste in Pod Section A-5. As such, he has not established a violation of the Eighth Amendment as a result thereof.

Plaintiff's second set of allegations concerns an allegedly inadequate supply of toiletries—namely razors, soap, toilet paper, and clean clothing. *Compl.*, at 8. While the Court is sympathetic to these deprivations, its inquiry is once again limited to whether the limited supply of these items rises to the level of a constitutional violation. As above, courts have broadly held that the temporary

deprivation of toiletries does not violate the Eighth Amendment. *See*, *e.g.*, *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (reasoning that "[d]eprivation of other toiletries for approximately two weeks—while perhaps uncomfortable—does not pose such an obvious risk to an inmate's health or safety" to offend the Eighth Amendment); *Dopp v. W. Dist. Of Okla.*, 105 F. App'x. 259, 261 (10th Cir. 2004) ("Being deprived of hygiene products for eight days is not sufficiently serious to implicate the Eighth Amendment."). Courts in this Circuit have largely adopted this reasoning. *See Ash v. Greenwood*, No. 2:17-cv-03022, 2018 WL 4201398, at *6 (S.D.W. Va. Aug. 30, 2018) (inmate deprived of toilet paper for three days did not state a valid Eighth Amendment claim); *Moore v. Parham*, No. 1:16-cv-01519, 2017 WL 4118458, at *3–4 (E.D. Va. Mar. 23, 2017) (inmate deprived of toiletries for nineteen days did not state a valid Eighth Amendment claim). Courts have reached similar conclusions with respect to inmates' access to clean clothing. *See Gochie v. Beaver*, No. 5:18-cv-148-FDW, 2018 WL 5924503, at *2 (W.D.N.C. Nov. 13, 2018) (prisoner who alleged that "clean clothes are not given out for days at a time" did not allege an Eighth Amendment violation); *Johnson v. Fields*, No. 2:14-cv-38-FDW, 2017 WL 5505991, at *10 (W.D.N.C. Nov. 16, 2017) (prisoner denied a shower and clean clothes for twelve days did not allege an Eighth Amendment violation). Troubled though the Court may be by the deprivations Plaintiff outlines in his Complaint, they evidently do not rise to the level of an Eighth Amendment violation. In any case, as above, Plaintiff has failed to assert any injury resulting from the denial of hygiene products. If follows that Plaintiff has not plausibly alleged a violation of the Eighth Amendment on these facts.

Third, Plaintiff claims that he and the other inmates in Pod Section A-5 are "den[ied] any outside recreation and barely get out o[f] [their] [c]ells each day." *Compl.*, at 8. "It is true that, in certain circumstances, restricting inmates' opportunities for physical exercise constitutes cruel and

unusual punishment in violation of the Eighth Amendment." *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980). In order to constitute such a violation, however, restrictions on exercise opportunities and recreation must be complete and prolonged. *See*, *e.g.*, *Mitchell v. Rice*, 954 F.2d 187, 192 (4th Cir. 1992) (denying qualified immunity where prisoner was confined for "seven months and eleven months, without any opportunity for out-of-cell exercise"). There is no bright-line test for determining whether recreational restrictions violate the Eighth Amendment; instead, courts examine the totality of the circumstances. *Id.* at 191. Here, Plaintiff has not alleged that he was denied recreational opportunities for any particular amount of time. Yet even assuming Plaintiff had alleged facts sufficient to support an Eighth Amendment violation—which he has not—he has provided neither allegations nor evidence suggesting that he was injured because of restrictions on his exercise opportunities. *See Shakka*, 71 F.3d at 166. Put plainly, the "Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." *Strickler*, 989 F.2d at 1380. This Court cannot construct Plaintiff's claims for him, and is therefore unable to conclude that an Eighth Amendment violation has occurred here.

Plaintiff's final set of allegations—that he and other inmates are denied "medical help on a daily basis"—follows a similar pattern. *Compl.*, at 8. It is true that prison officials "must ensure that inmates receive adequate . . . medical care." *Farmer*, 511 U.S. at 832. While it is impossible to precisely define "adequate" medical care, a "medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes

continuous severe pain." *Williams v. Glover*, No. 3:17-03714, 2019 WL 1219703, at *4 (S.D.W. Va. Mar. 15, 2019) (quoting *Motto v. Corr. Med. Servs.*, No. 5:06-cv-00163, 2007 WL 2897866, at *10 (S.D.W. Va. Aug. 27, 2007)). Here, Plaintiff's Complaint contains no information whatsoever regarding an injury or illness requiring medical care. Absent any such allegation, the Court cannot find that Plaintiff has demonstrated a sufficiently serious deprivation of his right to adequate medical care. It follows that he has failed to state a claim for which relief may be granted with respect to any of his alleged injuries.

## IV. CONCLUSION

Pursuant to the foregoing analysis and Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court **GRANTS** Defendants' Motion to Dismiss, ECF No. 17, and **DISMISSES** the Complaint, ECF No. 3, with prejudice. The Court further **ORDERS** this case removed from its docket.

The Court **DIRECTS** the Clerk to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: October 30, 2019

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE